The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the court. You're coming in. The United States Court of Appeals for the Fourth Circuit are admonished to draw nods and give their attention. For the court is now sitting. God save the United States and the Honorable Court. Please be seated. All right. Please be seated. I need a little more volume, Bobby. And a bigger. We're having a couple of technical difficulties, so bear with us for a second. Can we blow it up? Well, good morning, everybody. Judge Quattlebaum, Judge Floyd, can you hear me? Yes, sir. We can hear you fine. All right, great. Well, I apologize for not being with you in person, but Mother Nature had other ideas yesterday. So if you'll bear with us as we proceed this way. And our first case today is Jackson v. Dameron. Mr. Weiss, we're glad to hear from you. Good morning, Your Honors, and may it please the court. My name is Samuel Weiss. I represent the appellant, Mr. Daniel Jackson. Mr. Jackson used a court-provided form designed for pro se incarcerated litigants. This form, you can see it on JA-11, told him to state his claims consistent with the language of Rule 8, briefly, succinctly, and explicitly told him to not cite any statutes, not cite any cases, and not make any legal arguments. So this is what he did. He attached two pages of factual allegations. The second page is largely about inadequate medical care. The first page is about paradigmatic failures to accommodate his disability. So, for example, things like a bottom bunk pass because of a mobility impairment, being forced to walk up and down two flights of stairs just to get medication and food, which are public services provided by the prison, and then how he had to leave his job because he was unable to get a physical disability accommodation of being able to wear different kinds of shoes. So after filing that pro se complaint, that now goes to a district court to determine, sua sponte, whether it states a claim. Let me ask you three quick questions about the extent of your appeal. Is your appeal confined to the failure of the trial judge to find that there was an ADA claim? Yes. Secondly, notwithstanding that 1983 argument, you obviously believe it's an error that he did not find the ADA claim. Now, there was a, I guess what you're asking is to vacate the district court's rulings both before the order on the 1915 motion to dismiss and after. Is that the scope of your appeal? I think just the former. Just the former. And vacating entering a final judgment. So what does that do to the rest of your claim? We're not challenging the finality of the Eighth Amendment claim. Just the ADA claim. I got you. And to perhaps make subtext text, in our opening brief we mentioned the due process clause. After reading the answering brief and thinking on its own, we believe that actually for the due process claim we were doing perhaps what Judge Wilkinson in Baudet said that we should not. I think it's a closed case, but perhaps what we were doing was taking a stray comment and saying that that preserves appellate review. And so we're happy to concede on that claim in part because I think it makes even more clear that the ADA claim stands in a totally different position. Well, you also had a retaliation claim in the amended complaint and you're conceding that as well? That's correct. So the only thing left is the ADA claim? Yes. So what do you... I appreciate your comments about how you could consider the bunk bed and the second floor as accommodation sort of issues. What do we do about the amended complaint or the supplemental complaint where Mr. Jackson says he's clarifying his initial complaints and is explicitly mentioning Eighth Amendment deliberate indifference, really, throughout the rest of the proceedings? I'm not sure there's a case that I saw in our precedent where someone has specifically articulated a claim as much as Mr. Jackson did and asserts another claim should have been identified. Right. I think that's a really important question and I think what distinguishes this from a circumstance like Baudet is the existence of the screening requirement under the Personal Mitigation Reform Act. Because what happened here was he files his complaint, the district court, who is, to be clear, put in a really unenviable position. The district court has been asked by Congress... The purpose of the screening requirement is to get rid of cases where people are saying the coffee's too cold or my ice cream melted. That's why they put the screening requirement in, but then they use the Rule 12 language. And so district courts before service are trying to be defense attorneys and plaintiff's attorneys to see whether these actually state a claim. So I don't envy the position the district court has put in, but here the district court, by dismissing the public entity and by making clear that the only claims going forward to service are these two 1983 claims, entered a dismissal with prejudice of what we argue is a valid ADA claim. And so right there... Counsel, if I'm remembering the record correctly, the initial complaint was dismissed and the district court identified what it viewed as the claim made as a deliberate indifference claim under the Eighth Amendment. And so that telegraphed to Mr. Jackson that that was what the court was doing. So he files another complaint, adds an additional claim for retaliation, and doubles down, language and otherwise, on the deliberate indifference claim. So this isn't a case where there's one pass. You've got two passes, and the district court was giving guidance when it dismissed the first case. So it seems like it puts the district court in an almost impossible position in that circumstance because they really do become the plaintiff's lawyer there. And I don't think that that was what Congress intended or that any of the cases have endorsed. So I don't think that we're asking for the district... And like I said, I think the district court is in a difficult position. What we have as just sort of a black letter civil procedure law here, what we're arguing is his initial complaint states a claim. And then the ADA claim, through the dismissal of any official capacity defendants and through the dismissal of the public entity that he named, that claim on docket number six is dismissed with prejudice. And again, black letter civil procedure law of this court is that when a claim is dismissed, a plaintiff does not need to reassert it in an amended complaint just to preserve it for appeal. And so we think once his claim, once his ADA claim is dismissed, he doesn't need defendants say he could have filed a motion for reconsideration or he could have amended it back in with additional facts. You're assuming there was an ADA claim there and the only claim identified by the district court was deliberate indifference. Correct. And we think that's the mistake. That the dismissal of that claim on pre-service screening, I mention this because Your Honor asked about sort of the post-screening behavior by the plaintiff. That the function of the screening requirement is to narrow the claims and to tell the plaintiff what claims he's able to pursue as a pro se incarcerated plaintiff. So once the claims were narrowed, he pursued the claims that he thought he had and he characterized it the way the district court said that those claims were viable. What we're arguing now is that for all intents and purposes, he filed a complaint. It stated a claim. Defendants don't make any sort of merits argument that it didn't. I don't think any merits argument against it is really plausible. And that when that claim was dismissed, that ends the record before us for all intents and purposes for thinking about appellate waiver. Looking at it from a trial judge's point of view, I don't think the inmate used the word accommodation. But what words in the complaint should trigger in the mind of a district judge, oh, this is an ADA claim? Right. So I think a few things. So one is so he talks on the first page, he talks about an ankle sleeve. That's really a disability accommodation, although it could kind of go both ways. The idea of being forced to walk up two flights of stairs to access food and medicine, despite the fact that that is injurious to him, just could not be a more paradigmatic Title II disability. When people think Title II ADA, they think a wheelchair ramp in a public library. And Tennessee versus Lane, which is the defining Supreme Court case on Title II of the ADA, is about a courthouse that made people go up a flight of stairs who had mobility impairments. So that's one. And then part two of three, let's say, is his second set of allegations are about he's working in an apparel plant. He wants to work, but he needs to wear a special kind of shoe to be able to work, just a normal tennis shoe instead of a boot. And that's denied him. Again, in the employment context, that's a textbook. So I hear you. And probably not a lot of people would, I mean, maybe some, I don't want to concede anything, but many people might say, yeah, I can see how you could allege an ADA claim there. But is, first of all, a question. There's a lot of cases starting about 2020 where we talk about the strongest, construe in favor of the strongest claim. And isn't it correct that after our Coon case in 2022, the ADA claim would require deliberate indifference? That is true. And you didn't challenge the deliberate indifference finding. Yes. So is this somewhat academic? It's not academic. But I appreciate the question. So deliberate indifference is just a mens rea estate. It's what you might call criminal law recklessness, right, a knowing disregard. But the question is, it's a knowing disregard of what? And in the ADA, it's a knowing disregard of a substantial likelihood of a violation of federal law. So they are the ADA. And in the Eighth Amendment, it's a knowing disregard of a substantial risk of serious harm or a failure to address a medical need, depending on if you're looking at it from a conditions of confinement or a medical care lens. So you're saying that there's not identity of the mens rea, so one doesn't preclude the others? Precisely. So that the mens rea stacks on top of the relevant substantive law. And the Eighth Amendment, of course, and I'll just make this quick final point about the – to Judge Floyd's question about what in this complaint. So under the remedies – because that's a big point in Beaudet where Beaudet, the plaintiff, was saying, I want a jury trial. And then someone like me comes in on appeal and says, actually, this whole statute is unconstitutional and tries to turn it into all this stuff that it's not. And there's this very elegant prose from Judge Wilkinson explaining why it's not the role of appellate courts to do that. And that goes to remedy. And if you look at the remedies that he sought here, it looks more like Stanton, which is the government did something wrong and owes me money. That's what he alleged and that's what we're alleging. And the first line on the remedies is I want my lost wages because I was inappropriately forced out of my job because they wouldn't let me have the right kind of shoes. And that doesn't sound in an Eighth Amendment violation. It doesn't violate the Eighth Amendment to let somebody quit their job as opposed to continuing to earn cents on the hour. But it might violate the ADA. So while, before you sit down, I'm trying to figure out kind of the, you can look at all these cases and say this has a little bit more of a claim. This suggests a claim more than the others. And try to kind of just make them very fact-based. But with our Bodette case and our more recent cases, it seems like you don't disagree that the role of the trial judge is not to become counsel for the plaintiff. And try to come up with any imaginable claim that could exist. It sounds like the rule would be based on the allegations, do they readily support a claim or reasonably support a claim or something like that. Is that fair? I think that's totally fair. And I think for sort of two limiting principles here because I understand that what we're arguing could be read in a really capacious way. But one limiting principle is that the plaintiff has an obligation to prosecute his case. And so this can't be a situation like Bodette where you have a pro se person saying, I want a jury trial. I want a jury trial. A lawyer comes in after summary judgment and says, well, actually, we want this whole statute held unconstitutional. And then so that's one. And the second is that as far as the judge being the advocate for the plaintiff, the Prison Litigation Reform Act, by putting in a screening requirement and by things like this form, but it's just accurately reflecting Rule 8, saying just put in facts. Again, I'll say it again. It's an unfortunate position for district courts to be in. I don't think that it's a great system. But it does require the district court sua sponte to think of both defenses and claims, which is to say to be an advocate for the defendants and the plaintiffs. And so in prison cases, I think by having that screening requirement are a little different because the claims, we're talking about a claim that was dismissed before he had any opportunity to press that claim. Judge, can I ask one more question before counsel says anything? Sure, go right ahead. Yes, sir. Ian, imagine whether it's this case or another, the factual allegations suggest one claim in a more compelling way than another claim. In other words, the allegations of a whole might suggest that the rest of the complaint is more consistent with a certain claim. But yeah, if you look hard, there's some indicia of another claim in the facts. What's a district court supposed to do under the assumption that the allegations point more heavily towards one claim than another? Well, I think with overlapping facts, it really allows plaintiffs to plead claims in the alternative, and they often do. I think the safe thing for district courts to do is to just be permissive in allowing service, and that way you allow the parties themselves to sort it out. So I'm sympathetic to a district court judge who, if there's a set of allegations and there's sort of conflicting directions the claim would go in, seeing a stronger one and trying to put that forward, especially if there could be only one recovery, that's obviously the decision that plaintiffs' attorneys make all the time. I think better safe than sorry to be permissive in service, I think that's what the district court thought that it was doing here, and was put in a difficult position and just made a mistake by not thinking through the ADA elements of it. All right, thank you, Mr. Weiss. You've got some rebuttal time. Mr. Schnitzler, we'll hear from you now. Good morning, Your Honors. May it please the Court, Nathan Schnitzler, along with my co-counsel who's listening in today, Grace Morse McNellis, represent the appellees in this matter, Dr. Kyle Smith and Dorinda Damron, who were medical providers at Augusta Correctional Center at the time of the incidents alleged in the complaint. Your Honors, if I may begin by responding to my friend's arguments just a few moments ago, I think it's important to clarify a couple of issues procedurally that happened at the district court. And Judge Agee, you touched on this initially, but the initial complaint itself was not dismissed. Only one party that was named as a defendant was dismissed from the complaint, and it was only dismissed as to a 42 United States Code Section 1983 claim that the district court understood had been alleged against it. That was the Augusta Correctional Center medical department defendant. Nothing in Judge Urbanski's screening opinion or order dismissed any other potential claims that Mr. Jackson could pursue. And so he was – Mr. Jackson was well within his right to clarify and indeed did move for leave to file an amended complaint to make sure that his claims were properly before the court. And Judge Qualbom, as you noted, nothing in that amended complaint referenced the Americans with Disabilities Act. It sort of doubled down, Judge Agee, as you mentioned. It doubled down on this notion that this was a deliberate indifference claim related to medical treatment. Well, but that's kind of a catch-22. He's told he can't say Americans with Disabilities Act or those kinds of things. I mean I asked Mr. Weiss, I mean what words in the complaint would trigger a judge to file an ADA claim, and he answered the question. But you can't go down that road and say he didn't say ADA because he was prohibited from doing that. Well, Judge Floyd, on the one hand, the initial form that Mr. Jackson submitted his complaint on does contain that language about not referencing statutes. The amended complaint was not submitted on that form, and there's nothing that requires pro se litigants, prisoners, or otherwise to use that form. But also some trigger words that would have been very helpful for the judge would have been failure to accommodate. Some of the typical sort of legal jargon we might use. Correct, Your Honor, and he may not have known to use that, which is appropriate. But I think what's important. I don't think, is disability, is the word disability in any of his claims, disabled disability? I don't recall seeing that, Judge Qualabamany, the original complaint or the amended complaint. And that also, I think, brings up sort of a procedural question as well in terms of if the only issue on appeal that we're really focused on for purposes of this case is the screening order that dismissed Augusta Correctional Center as a defendant for the 1983 claim. Mr. Jackson's filing of an amended complaint really rendered that original complaint as nothing. Because as this court's case law has said very clearly that the filing of an amended complaint renders the original complaint of no effect. And so that sort of, I think, made it difficult, I guess, on briefing to sort of straighten out what allegations we need to focus on. And so I know a lot of the opening brief from the appellant focused on the allegations in the amended complaint. But I think if we're talking about the screening order today, we're really confined to what's in the original complaint. Well, I don't have it right in front of me, and I might be wrong about it. But he was transferred from one facility to another. And somewhere in my mind, I read or saw or have a note that there was a medical assignment to a bottom bunk. I mean, am I right about that? That was alleged, Judge Floyd. And I do believe it was in the original complaint. So why wouldn't that be an accommodation? Well, again, it possibly could be. But in terms of the district judge's position in trying to sort out what the claims are that are before it and without jumping into the realm of becoming an advocate, I think there's a little bit of an onus and probably a very strong onus on the plaintiff to make sure that the court and the defendant or defendants are aware exactly of what the claims are that he's pursuing. And that's where, if you look at the waiver of answer that was filed by the defendants, there were multiple affirmative defenses that were asserted, one of which asserted affirmative defenses that would apply to a state law medical malpractice action. But Mr. Jackson never once sort of asserted and doesn't assert here that he was trying to pursue any sort of state law claim against either of the defendants. They also raised the issue of qualified immunity. And in response, Mr. Jackson filed a document basically saying that the defendant wasn't entitled to qualified immunity in his individual capacity, which we do contest that the original complaint stated an ADA claim on the merits because it didn't sue a proper entity that was a proper defendant. And that would also cut against the appellant's argument that the claims possibly could be construed as being in either defendant's official capacity to sort of support a theory under the ADA. What's your, do you have a response to your colleague's answer to my question about Coon and whether, if you assume the deliberate indifference, substantive dismissal is not challenged and therefore is okay, does that render any claim that an ADA claim might exist as kind of beside the point? I believe it does. He says the mens rea is different. I mean, if you could get to that specific point. It sounds like he would agree if it's identical mens rea. I'm only going to put words in his mouth, but he came pretty close to that, I think. But it says they're not the same. I would agree that in the context of looking at deliberate indifference in the ADA, there's not necessarily that intentional mens rea for purposes of deliberate indifference. But I think what, when we're talking about Coons and why that, if that deliberate indifference, I guess dismissal, was not challenged on appeal, why that would render the ADA claim moot really goes to what has now become the law of the case. I mean, we now have a summary judgment ruling where the court has made findings of material facts that are not genuinely in dispute. And in those findings, which have not been challenged, establish that the allegations in the complaint did not ferret out, as Mr. Jackson suggested that they would, and actually that a lot of these allegations were not supported by the evidence and that Dr. Smith and Nurse Dameron were actually actively treating him and following him. Maybe I have it, maybe I'm missing it, but I think accepting your law of the case argument, I understood your colleague to be saying their law of the case insofar as the Eighth Amendment case might go, but an ADA case is not identical. So law of the case on Eighth Amendment doesn't render an ADA claim, if one were there, to be also unviable. And I apologize if I wasn't sort of articulating clearly where I was looking at the issue, Judge Quattlebaum. I think, for my part, if we look at what happens subsequent to this panel's decision, presumably we have a remand to the district court. The district court now has a record that has not been challenged on appeal for purposes of summary judgment, and it's our position that those findings of fact and the summary judgment opinion would basically render the ADA claim, it would have to be dismissed. So you're saying even if legally there's some daylight in the mens rea, the findings would doom a ADA claim as well? Yes, Your Honor. Okay, I got you. I'm not sure that I'm right about this, but under the ADA, in its reach of further than the 1983 action, by that I mean, can it reach the department under an ADA claim? Under the ADA, the appropriate defendant, which was never named, would be the Virginia Department of Corrections or possibly the director of the Virginia Department of Corrections. And I apologize, Judge Boyd, if I'm not understanding the question. I'm not sure I'm answering the question right. I remember somebody's married to somebody, and they say the nurse and the lieutenant, and he named the wrong person apparently. Yes, Judge Boyd, that was, which I also think this is no longer an issue for purposes of the appeal, but the due process claim, that applied to the husband of Ms. Dameron, but he was never named as a defendant. I got you. Can I ask? Let me go back to your answer to Judge Quattlebaum's questions. So to be sure, if the deliberate indifference claim is based on the same set of facts as an ADA claim would be based, and the district court judge finds that those facts cannot sustain a claim as to deliberate indifference. And so it's made findings of fact as to that claim. Was it your argument that those factual findings, which are now uncontested, would also negate the ADA claim? Judge Agee, I believe it's a little bit more nuanced than that in that for purposes of the deliberate indifference claim, if I recall correctly, the magistrate judge who had the summary judgment decision under consent, made several findings based on the undisputed facts that had to do with the actual specific medical care of Mr. Jackson, and some of that being, much of that being that the claims that Mr. Jackson made about needing an ankle sleeve, needing a bottom bunk, needing physical therapy, all these types of things that really are tied in with the ADA claim, even though there are these separate allegations about having to go up the steps, two flights of stairs, and needing a bottom bunk. At the end of the day, it was undisputed that from a medical perspective, what Mr. Jackson was claiming he needed in terms of these sort of the work boots, or being able to wear tennis shoes rather than work boots, the ankle sleeve, in actuality and on the summary judgment record, those allegations were not supported. And actually the evidence provided by the defendants at the summary judgment stage established that Mr. Jackson did not need any of those. And so I think that's what renders or would ultimately be a death knell, I think is what I said in briefing, to the ADA claim were this panel to remand the case for consideration as to the ADA. I asked your colleague this, and I get how this case might could be resolved under the specific facts in various ways, but I'm trying to make sure I have your articulation of the rule that should govern this. I mean, we have the Bodette case from 40 years ago that's still good law. We have some more recent cases about where we've adopted language like identifying the strongest argument. And so I'm just trying to make sure I understand if we could clarify for district courts what their obligation was. Is there some standard or some rule that you would have us, you think is the appropriate rule based on our case law that reconciles those? I mean, here I think you acknowledge there's some language that could maybe reference an ADA claim. If there's some language, is that enough? Were it not for the maybe arguably disclaimers or doubling down later? Or do we look at what the primary thrust of the complaint seems to be? Tell me, if you could say what we should state the rule to be, what would it be? I would say, Judge Quattlebaum, that the rule, particularly under the circumstances of this case. I don't want the circumstances of the case rule. We've got to talk about the next case too. What's the rule? The rule, Judge Quattlebaum, would be that a plaintiff is the master of their complaint and needs to alert the district court and the defendants specifically as the types of claims that are being pursued in the matter throughout the case. If a plaintiff is going to allow the district court and the defendants to go throughout the litigation, from beginning to summary judgment to perhaps even trial, and never articulate a theory, particularly an entirely separate cause of action, as opposed to different theories underlying a single cause of action, that that plaintiff has forfeited his or her ability to pursue such a claim. As a follow-up to that, we should tell the Department of Corrections they shouldn't be given instructions as to what they can put in their complaint. Judge Floyd, I agree. The form, I understand, is available on the district court's website. Well, I mean, not only that. I mean, not just the title, 1983, but you can't put in, say, ADA or civil rights or whatever it be. I mean, that's what kind of pushes me in this case a little bit, is that he's been told not to do that. The form certainly could be amended, Judge Floyd, as you suggested. And again, I would fall back on the fact that the form's not required. It's available to all pro se plaintiffs, whether they're in a state correctional facility or a local jail or a regional jail. So it's not a limited form that the Department of Corrections uses. It's used throughout all the correctional facilities. Well, what about the instructions? Not just the form and the title, 1983. What about the instructions? Is that a prison policy of Virginia? Not that I'm aware of, Judge Floyd, no. And following up on the rule question, and Judge Floyd, in my questions, is whether or not this is that situation. But imagine a complaint, the allegations of which suggest more strongly than another claim that this is the thrust of my complaint. Yet you might find clues that could support another cause of action. Does the fact that one claim seems to be the thrust of the complaint allow a district court to identify it as the claim, even if one might could find enough for another claim? It's a hard question, and I think under this court's case law, with the district court instructed not to enter the realm of becoming an advocate, if a party or plaintiff, I guess, in this circumstance has put forward their theory of why they are seeking relief, and even though there may be alternative potentially causes of action within that complaint, again, I fall back that the plaintiff is the master of their complaint and is telling the court and the other parties in the case what this case is about. And if anybody's mistaken, the onus is on the plaintiff to correct any misreading. One last question that may get to this. Both of y'all, I think, put in your briefs that we should consider this de novo, and certainly grants of motion to dismiss are typically de novo. This is kind of an interesting situation, though, where a district court's not really being challenged for dismissing a complaint. It's the construction of allegations and maybe determining what cause of actions might exist. On the one hand, construing legal claims does seem legal, so I concede de novo, but it also feels like a process where you're looking at a bunch of stuff and trying to figure out the complaint. Anyway, I didn't see, we tried to figure out if anyone had ever considered this an abuse of discretion exercise. I mean, are you aware of any law that does that? You understand my distinction, not in the dismissal of allegations, but in the interpretation of sometimes confusing and conflicting documents from a, per se, litigant. I did come across, and I'm almost out of time, if I can answer. I did come across some out-of-circuit precedent that seems to suggest that some courts have looked at these screening decisions under more of an abuse of discretion or clearly erroneous standard rather than a de novo standard, but my understanding from the prior case law in our circuit is that they're reviewed de novo, and I haven't seen anything that suggests there is another. Do you remember the authority from out-of-circuit? I do not recall it offhand, Your Honor. All right. Well, maybe you could send that to us in a 28-J letter. Yes, Judge, I'd be happy to do that. With a copy to opposing counsel, of course. I see that I'm out of time. Thank you, Your Honors. We would ask that the order of the district judge be affirmed. Thank you. All right. Thank you very much. Mr. Weiss, you have some rebuttal time. Okay. Thank you, Your Honors. I'll address the question from Judge Quattlebaum first. I understand the – well, maybe first I'll address the precedent that I'm guessing he's thinking of. So 1915A has the screening requirement, and you can dismiss – district court can dismiss claims for being abusive, for being frivolous, or for failing to state a claim. And the frivolity or the abusiveness, which go more to docket management, are reviewed for abuse of discretion. And then pure to state a claim is reviewed de novo. And we would think that – it makes sense to me. You will never get a smaller record than this because you don't even have a motion to dismiss. What we have here is a complaint, and then the district court on its own analyzing that complaint. So I think in this circumstance, and I think the sort of meta dispute that goes over a lot of our different interpretations is we're saying this case was dismissed at docket number six. And when that case was dismissed, that was over for purposes of this appeal. That's the record. And in that circumstance, de novo review would obviously be appropriate because this court is obviously as well-possessioned as a district court to just read a complaint and see what it says. So why was it over at that point? I mean, wasn't there an amended complaint filed after that? Yeah, so I think two points on that. So we have the dismissal order with the dismissal – first the short opinion and then the order. What the opinion says is this is a 1983 – So your argument seems to say that everything that happened after that initial dismissal is just – we ignore that. Yes. So we think if we look at that – So in that scenario, the claimant gets a second shot. The district court becomes his de facto lawyer, and the court of appeals becomes his de facto lawyer. I don't think so on either count. So I think the screening requirement – what we would say is that the district court becomes the defendant's lawyer because the defendants haven't been served. They're not even aware of the case, and the district court is dismissing claims. So what we have in a screening order is it says even though the allegations state a claim for the ADA and even though we know from – we have a 9-0 Supreme Court opinion that says the plaintiff's job is to state simply, concisely, and directly events that entitled them to damages, period. That's enough. He did that. We argue, and I think it's hard to contest. And we have a screening order that says there's two claims that can go forward. There's two defendants that can go forward. Everything else is dismissed. And so – and that's the purpose – And we're going to give him a second. He's going to get a second shot at this, and he takes the second shot. Well, he doesn't get a second shot at the allegations that were dismissed out of the initial complaint. So the dismissals – it's not clarified whether the dismissal of the public entity or official capacity claims were done with prejudice and black letter law in this court. When it's ambiguous, the assumption is that there is a merits adjudication, that the dismissal is with prejudice. And as to sort of point two, Your Honor, to defendant's point about him not re-alleging it in complaints, I have a cite here in case it's helpful, Young v. City of Mount Rainier. When a case is dismissed with prejudice, or when a claim is dismissed with prejudice, it does not need to be re-alleged. That's, quote, needlessly formalistic to take dismissed claims and re-allege them in an amended complaint. So I see I have one minute left. Just to address the law of the case issue. So I think there are two really important ways that the – and, of course, they're not factual findings. It's on summary judgment. But the conclusions of the district court don't bind for purposes of the ADA. And one is that we have a totally different legal standard. The Constitution, the Eighth Amendment, cruel and unusual punishment, that is the absolute floor. The ADA is a broad remedial civil rights statute. Whether something is a reasonable accommodation is a much lighter lift for a plaintiff than whether something violates the Eighth Amendment. So we're dealing with different substantive standards. And importantly, we're dealing with different defendants because the defendants in their official capacity are just stand-ins for the public entity. So, for example, you'll see in the summary judgment opinion, there are facts where the defendants say, I didn't do this. And the district court agreed and said, someone took this away, but it wasn't me. And in the 1983 context, that makes perfect sense because liability is personal. But in the ADA context, liability is against the public entity. And so you can see that in the opinion, but even for things that you cannot see in the opinion, like the issue of walking up and down the stairs, which is a state of claim on its own. That's never mentioned. But you just don't know the road the parties would have gone down if he was able to conduct discovery against the public entity as opposed to just against the actions of two individuals. So we found that, and again, the district court in a lot of ways gave the plaintiff here a fair shake and did its best in a challenging situation. And we're not challenging the Eighth Amendment argument because the Eighth Amendment is a really, really high standard. And we do think, with the challenges of being a pro se litigant, he really did get a fair shake there. But this initial dismissal of his ADA claim was erroneous. I'm over time. Thank you, Mr. Weiss. I would want to compliment both counsel on excellent arguments today. And Judge Quattlebaum and Judge Floyd are going to come down and give you the greetings of the court. And then we'll move on to our next case. Thank you, Your Honors.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., Henry F. Floyd